AGUEDA RIVERA, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; FONDO DEL SEGURO DEL ESTADO, interventor.

Núm. 243.—*Sometido:* Junio 8, 1942.   *Resuelto:* Julio 20, 1942.

*Ismael Soldevila,* abogado de la recurrente; *Hon. Procurador General George A. Malcolm, G. Benítez Gautier, Procurador General Auxiliar* y *G. Atiles Moréu, A. de Jesús Matos,* y *J. Correa Suárez,* abogados del Fondo del Seguro del Estado, interventor.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Carmelo Rivera trabajaba como obrero con Juan Burgos, patrono asegurado con el Fondo del Seguro del Estado. El 23 de mayo de 1938 falleció dicho obrero a consecuencia de la cornada de un buey, recibida el 17 de ese mismo mes, en el curso de su empleo en Ceiba, P. R.

El Administrador del Fondo del Seguro del Estado, por decisión de 7 de julio de 1938, declaró que el accidente por el cual perdió su vida el obrero, era uno previsto por nuestra Ley de Compensaciones por Accidentes del Trabajo y por tanto sujeto a compensación, pero que, no habiendo persona alguna con derecho que dependiera para su subsistencia del obrero fallecido, se ordenaba el archivo del caso.

El 3 de agosto del mismo año, Agueda Rivera, hermana del obrero Carmelo Rivera, radicó un escrito de apelación en la Comisión Industrial, contra dicha decisión, compareciendo en su carácter de madre con patria potestad sobre los menores Norberto y Juanita Rivera y alegando que los mismos dependían de lo que ganaba su tío, el obrero muerto, para su subsistencia.

Celebrada vista, la Comisión Industrial, en 17 de noviembre de 1938 dictó resolución al efecto de que los sobrinos no están incluídos entre los parientes que pueden percibir compensación de acuerdo con el inciso 5°. del artículo 3 de la Ley Núm. 45 de 1935 ((1) pág. 251).

El 2 de diciembre de 1938, la peticionaria Agueda Rivera radicó una moción de reconsideración, la cual fué declarada sin lugar el 28 del mismo mes y año. No se estableció recurso alguno para la revisión de dicha resolución.

Posteriormente, el 5 de julio de 1939, compareció nuevamente Agueda Rivera ante la Comisión Industrial con un escrito de apelación contra la resolución del Administrador del Fondo del Seguro del Estado dictada el 7 de julio de 1938, alegando no estar conforme con la misma por ser ella madre de crianza del obrero fallecido y que dependía de él para su subsistencia.

Visto el caso, en 23 de mayo de 1940 la Comisión Industrial dictó resolución en el sentido de que:

"...Agueda Rivera no ha probado su alegada condición de madre de crianza de Carmelo Rivera, y resolvemos de conformidad con el Administrador del Fondo del Estado, que Carmelo Rivera no dejó al morir beneficiarios con derecho a percibir la compensación

que pudiera haberse originado por causa de su muerte por un accidente del trabajo y denegamos la presente apelación.''

Solicitada y denegada la reconsideración, la peticionaria radicó el presente recurso, señalando la comisión de cuatro errores, a saber:

''A. Al decidirse como se decidió en contra de la peticionaria la cuestión de derecho sobre suficiencia de la prueba, manteniéndose que no es bastante para declarar la existencia de la relación de madre e hijo de crianza entre la peticionaria y el obrero fallecido.

''B. Al exigir según se exigió, como requisito de ley para la creación del vínculo de madre e hijo de crianza, que se establezca el nexo desde la infancia del hijo, a pesar de no haber estatuto que así lo disponga ni razón natural o lógica que lo sostenga, máxime cuando aun la adopción, institución más formal y solemne, se puede hacer en favor de una persona mayor de edad, si ella lo consiente, con arreglo al Código Civil.

''C. Al no declarar a la peticionaria madre de crianza del obrero Carmelo Rivera, habiendo prueba para ello.

''D. Al interpretar restrictivamente el tercer párrafo del inciso 5 del artículo 3 de la Ley de Compensaciones por Accidentes del Trabajo (Leyes de 1935, pág. 267), que reconoce el derecho de indemnización de los padres de crianza siempre qué no hubiere algún otro pariente con prelación y aquéllos dependieren de lo que ganaba el obrero.''

La única cuestión envuelta en el caso es si Agueda Rivera era o no madre de crianza del obrero fenecido.

Los hechos que la Comisión Industrial declaró probados por la peticionaria en la vista, son los siguientes:

''(a) Que Agueda Rivera sólo era 4 años mayor que su hermano Carmelo.

''(b) Que Carmelo Rivera vivió con su padre hasta la muerte de éste, y entonces vino a vivir con Agueda.

''(c) Que Carmelo vino al lado de Agueda ya casi hombre, acostumbrado a trabajar y a ganarse la vida.

''(d) Que desde que vino a vivir con Agueda le daba su sueldo el que ésta empleaba en la manutención de todos.''

¿Sostienen estos hechos la alegación de la peticionaria de que Carmelo Rivera era hijo de crianza de ella?

El concepto de hijo de crianza .no aparece definido en nuestra Ley de Compensaciones por Accidentes del Trabajo. Esta ley meramente menciona los hijos y padres de crianza entre las personas con derecho a compensación como' dependientes.

Solamente hemos encontrado otra ley entre nuestros cuerpos legales en que también se hace referencia a las relaciones entre padres e hijos de crianza. Es ésta la Ley Núm. 238 de 15 de mayo de 1938 "Creando un Sistema de Hogares de Crianza, etc.". En la misma se define, entre otros, el término Hogar de Crianza (*Foster Home*) como "aquel que le proporcione protección, alimentos y atención individual a un niño que no sea el propio."

Vamos a ver cómo define el diccionario los conceptos de "hijo" y de "padre de crianza".

*Crianza*—según el Diccionario de la Lengua Española (Real Academia Española, ed. 1939) es la "acción y efecto de criar. Con particularidad se llama así la que se recibe de las madres o nodrizas mientras dura la lactancia. Epoca de la lactancia... *Dar crianza a uno*... Criarle, cuidar de su crianza."

*Criar*—"3. Nutrir y alimentar la madre o la nodriza al niño con la leche de sus pechos o con biberón... 5. Instruir, educar y dirigir... *Estar uno criado*... Poder bandearse o cuidarse sin otro que lo dirija o le ayude."

El Diccionario Salvat y el Diccionario Enciclopédico Hispano-Americano expresan los mismos conceptos.

Del Appleton's *New English-Spanish Spanish-English Dictionary* (ed. 1931) tomamos el siguiente significado de la palabra "*Foster*—II. *a.* Como adjetivo, se aplica comúnmente a nombres que por sí solos denotan parentesco, para expresar condición análoga debida a crianza o, general pero no necesariamente, adopción.—*foster brother, child, sister*—hermano, hijo, hermana de leche, adoptivos, o criados como hijos, etc. *foster mother, father*—madre, padre adoptivos, o que han

criado a los *foster children* correspondientes—*foster home*— casa de crianza, donde se crían niños ajenos.''

Del ''Webster's Universities Dictionary of the English Language'' (ed. 1940) tomamos los siguientes conceptos: ''*Foster child*—A child nursed by a woman not the mother, or bred by a man not the father.''

''*Foster father*—One who takes the place of a father in bringing up and educating a child.''

''*Foster mother*—A nurse; a woman who nurses and cares for the child of another.''

El concepto de madre, padre, o hijo de crianza no parece, aun haber sido adoptado por la Real Academia Española y por tanto no aparece en el diccionario publicado por ésta. Sin embargo, en Puerto Rico es de uso bastante común, al extremo de haber sido incorporado a algunas de nuestras leyes. Y se usa, según nuestro entender, en el mismo sentido que el de *foster father, mother or son* del inglés. Siendo ello así, es natural que solamente puedan considerarse hijos de crianza aquellos que son criados, es decir, educados, dirigidos e instruídos por una persona que no es su padre natural, desde la infancia. Por lo tanto una persona que *ya está criada,* es decir que ya puede ''bandearse o cuidarse sin otro que lo dirija o lo ayude'', ha, indudablemente, pasado la edad en que pueda establecerse entre ella y otra persona mayor, las relaciones de padre e hijo de crianza.

En el caso que nos ocupa, según se demostró por la evidencia aportada en la vista, Carmelo Rivera vino a vivir a casa de su alegada madre de crianza, la recurrente, cuando era ''ya casi un hombre, acostumbrado a trabajar y a ganarse la vida'', es decir, ya criado; ya pudiéndose valer de sí mismo sin otro que lo dirigiese o ayudase. Por tanto, resulta a todas luces imposible que se pueda establecer la relación de padre e hijo de crianza entre una persona ya criada y otra 4 años mayor que ella, pues esta relación, para que pueda establecerse debe comenzar desde la niñez o la infancia del hijo de crianza.

*La resolución recurrida debe ser confirmada.*